FILED
COURT OF APPEALS
DIVISION II

2014 FEB 11 AM 8: 40

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44565-4-II |
| Respondent, | |
| v. | |
| SEAN RAY VICKERS, | UNPUBLISHED OPINION |
| Appellant, | |
| LARRY DEAN DOW, | |
| Defendant. | |

Johanson, A.C.J. — Sean Ray Vickers appeals his second degree theft conviction claiming that the State offered insufficient evidence at trial to prove that the two stolen VISA credit cards recovered from him were "access devices" as defined in RCW 9A.56.010(1). Consequently, he argues that the State did not establish all of the elements to satisfy former RCW 9A.56.040(1)(c) (2009), second degree theft (access device). Because the State offered sufficient evidence at trial from which a reasonable jury could infer that the recovered credit cards were "access devices," we affirm Vickers' conviction.

## FACTS

On April 12, 2012, Oleg Tkachuk and his cousin, Victoriya Statnik, noticed an older, green van parked near Tkachuk's car. Tkachuk saw his car's passenger window was broken and

a man standing by his car's passenger door; the man then got into the van and drove away. Tkachuk got into his car, followed the van, and called 911.

Vancouver Police Corporal Jeff Sundby, the first responding officer, pulled over the green van. Corporal Sundby learned the driver and passenger of the van were Vickers and Larry Dow, and when Tkachuk and Statnik arrived, they recognized Dow as the man taking things out of Tkachuk's car.

Corporal Sundby found a backpack and a purse in the van, which Tkachuk and Statnik identified as theirs. Dow told Corporal Sundby that he had dumped some items a short distance away, and Vancouver Police Officer Brian Viles was able to locate those items, which Tkachuk and Statnik also identified. Two credit cards and a Washington State driver's license in Tkachuk's name were among these recovered items.

The State charged Vickers with one count of second degree theft of an access device, one count of third degree malicious mischief, and one count of second degree vehicle prowling.[1] Former RCW 9A.56.040(1)(c); RCW 9A.48.090(1)(a); former RCW 9A.52.100 (2011). At trial, Tkachuk identified the two recovered credit cards as his. A jury found Vickers guilty as charged.

## ANALYSIS

Vickers argues that there was insufficient evidence to convict him of second degree theft because the State did not establish that Tkachuk's credit cards were "access devices." But Tkachuk's testimony and the context of the discovery of the cards would allow any reasonable juror to conclude that the credit cards were "access devices."

---

[1] Dow was also charged with second degree theft of an access device, malicious mischief, and second degree vehicle prowling. This appeal involves only Vickers.

No. 44565-4-II

The appropriate test for an insufficient evidence claim is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence are drawn in favor of the State and interpreted strongly against the defendant. *Salinas*, 119 Wn.2d at 201. An insufficiency claim admits the truth of the State's evidence and all inferences reasonably drawn from the evidence. *Salinas*, 119 Wn.2d at 201. We do not reweigh the evidence and substitute our judgment for that of the jury. *See State v. Kilburn*, 151 Wn.2d 36, 57, 84 P.3d 1215 (2004).

An "access device" is

> any card, plate, code, account number, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or anything else of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by paper instrument.

RCW 9A.56.010(1).

Asserting his insufficiency claim, Vickers relies on *State v. Rose*, 175 Wn.2d 10, 282 P.3d 1087 (2012). He argues that *Rose* creates a presumption that without affirmative evidence that they are active and usable, credit cards are not access devices. *Rose*, however, does not establish such a presumption. *Rose* holds that a defendant may prevail by demonstrating that trial evidence proves that a credit card is not an "access device"; when a defendant affirmatively establishes that the credit card was neither activated nor linked to an active account, the defendant can show that the card lacked the ability to obtain "something of value." *See* 175 Wn.2d at 17-18 & n.1.

In *Rose*, authorities arrested Rose shortly after he visited the victim's home and he possessed what appeared to be a credit card in the victim's name. 175 Wn.2d at 12-13. At trial,

3

the victim testified that she had received a credit card offer that included an unactivated credit card. *Rose*, 175 Wn.2d at 14-15. Trial evidence showed that the card was never activated, there was no account associated with the card. *Rose*, 175 Wn.2d at 17-18.[2] Accordingly, our Supreme Court held that the State had not demonstrated that the card constituted an access device. *Rose*, 175 Wn.2d at 18. It is incorrect to say that *Rose* created a presumption that credit cards are not access devices unless the State presents affirmative evidence that the cards are active and usable.

Unlike the defendant in *Rose*, here Vickers did not demonstrate that the two credit cards were not activated or linked to an active account. Therefore, *Rose* does not apply here.

Ultimately, the State offered evidence that the recovered credit cards were access devices. At trial, the State offered the testimony of Corporal Sundby and Tkachuk to identify the recovered credit cards as Tkachuk's. The State introduced photographs that Corporal Sundby took of the two credit cards and a Washington State driver's license issued to Tkachuk. Dow had taken those items from Tkachuk's car, where Tkachuk had kept them in either a backpack or his wallet. Any rational juror, upon hearing that the credit cards belonged to Tkachuk and that he carried them with him in his wallet or backpack, could reasonably infer that they were access devices.

---

[2] Like *Rose*, *State v. Schloredt*, 97 Wn. App. 789, 987 P.2d 647 (1999), and *State v. Clay*, 144 Wn. App. 894, 184 P.3d 674 (2008), *review denied*, 165 Wn.2d 1014 (2009), both involved credit cards as access devices. In neither case did the defendant demonstrate that the cards were inactive, unusable, or unlinked to active accounts. In *Schloredt*, Division One of this court held that the State makes a sufficient showing of an "access device" if a reasonable inference could be made from the witness testimony that the cards were active, absent evidence to the contrary. 97 Wn. App. at 794. Similarly, Division One held in *Clay* that RCW 9A.56.010(1) does not require the device to be activated, and the statute focuses on the capacity of the device to be used. 144 Wn. App. at 898-99. Like *Clay* and *Schloredt*, Vickers presented no evidence that the credit cards were inactive, unusable, or unlinked to active accounts.

No. 44565-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
JOHANSON, A.C.J.

We concur:

_____
PENOYAR, J.

_____
BJORGEN, J.